IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MALICK M. NJAI,<br><br>      Petitioner,<br>vs.<br><br>ALBERTO R. GONZALES, ET AL.,<br><br>      Respondents. | No. CV 05-03704-PHX-SRB-(BPV)<br><br>**REPORT AND RECOMMENDATION** |

On November 15, 2005, Petitioner, Malick M. Njai, #A79-654-074, confined in the Florence Service Processing Center in Florence, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc #1). On November 16, 2005, Petitioner filed an Amended Petition. (Doc. # 4.) Pursuant to the Rules of Practice of this Court, on November 23, 2005, this matter was referred to Magistrate Judge Bernardo P. Velasco for a Report and Recommendation. The Magistrate Judge recommends the District Court, after its independent review of the record, enter an order granting Petitioner's Amended Petition for Writ of Habeas Corpus.

**Factual and Procedural Background**

Petitioner is a citizen and native of The Gambia. (Ex. 1-8.)[1] He entered the United States near New York, New York on June 20, 1995, pursuant to a visitor's visa. (Ex. 5, 8.) Petitioner married Patricia Marie Smith on October 6, 2000. (Ex. 9.) On January 2, 2002, the Department of Homeland Security ("DHS") served Petitioner with

---

[1] All exhibit numbers in this Report and Recommendation are references to the Bates stamped exhibit numbers in the exhibits attached to Respondents' " Response in Opposition to Petition for Writ of Habeas Corpus."

1  a Notice to Appear in removal proceedings under section 240 of the Immigration and
2  National Act ("INA"), charging Petitioner with remaining in the United States for a time
3  longer than permitted (six months) pursuant to his nonimmigrant visitor's visa in
4  violation of section 237(a)(1)(B)(iii) of the INA, 8 U.S.C. § 1237(a)(1)(B)(iii).  (Ex.
5  13.)  The notice was served as a result of a Congressional inquiry into Petitioner's INS
6  status.   (Ex. 8.)  Petitioner was also found to have falsely claimed United States
7  citizenship on an I-9 form to obtain employment at a nursing home in Scottsdale,
8  Arizona. (Ex. 8.)    On March 27, 2002, Petitioner entered into a Plea Agreement,
9  admitting to Count II of an Indictment charging him with "False Impersonation of a
10 Citizen of the United States," in violation of 18 U.S.C. § 911.  (Ex. 15-21.)

11       On the same day, he was convicted in the United States District Court, District
12 Court of Arizona, of "False Impersonation of a Citizen of the United States," a felony,
13 in violation of 18 U.S.C. § 911.  He was sentenced to time served and placed on
14 supervised release for a term of one year.  (Ex. 22-24.)

15       On April 11, 2002, the DHS served Petitioner with Additional Charges of
16 Admissibility/Deportability in his removal proceedings, alleging that Petitioner violated
17 Section 237(a)(3)(D) of the INA, 8 U.S.C. § 1227(a)(3)(D), as an alien who has falsely
18 represented himself to be a citizen of the United States, based on his March 28, 2002
19 conviction.  (Ex. 25.)

20       On October 20, 2003, Petitioner submitted a Form I-360, "Petitioner for
21 Amerasian, Widow(er), or Special Immigrant," seeking to adjust his status under the
22 Violence Against Women's Act.  ("VAWA")  (Ex. 27-83.)  On October 31, 2003, the
23 Bureau of Citizenship and Immigration Services reviewed the petitioner and found that
24 it established a prima facie case for classification under the self-petitioning provisions
25 of the VAWA.  (Ex. 85.)

26       Due to the pending I-360 proceedings, the Immigration Judge administratively
27 closed Petitioner's removal proceedings on November 25, 2003.  (Ex. 86.)  DHS moved
28

1 to recalendar the removal proceedings, arguing that Petitioner's conviction for violation
2 of 18 U.S.C. § 911 rendered him ineligible for adjustment of status. (Ex. 87-89.) The
3 motion was granted. (Ex. 90.)

4 On March 15, 2004, the immigration judge sustained the charges of removal
5 lodged against the Petitioner. (Ex. 91-97.) The court also ruled that Petitioner's
6 conviction for "False Impersonation of a Citizen of the United States rendered him
7 ineligible for any form of relief, including adjustment under VAWA, and ordered
8 Petitioner removed to The Gambia. (Ex. 91-97.)

9 Petitioner filed a notice of appeal from the immigration judge's decision. (Ex.
10 98-103.) The Board of Immigration Appeals affirmed the judge's decision without
11 opinion on April 27, 2005. (Ex. 104.)

12 Petitioner was apprehended by Bureau of Immigration and Customs
13 Enforcement ("ICE") officers on May 5, 2005, in Surprise, Arizona. (Ex. 128.)

14 Petitioner filed a Petition for Review of Removal Order with the Ninth Circuit
15 Court of Appeals on May 9, 2005, and moved for a stay of deportation/removal on May
16 10, 2005, pending the appeal. (Ex. 106-108, 113-116.)

17 On May 10, 2005, Petitioner moved for a telephonic bond redetermination
18 hearing, before the immigration judge, pursuant to 8 C.F.R. § 3.19. (Ex. 110-111.) On
19 May 16, 2005, the immigration judge denied the motion for bond, finding that the
20 immigration judge has "[n]o jurisdiction to set bond." (Ex. 118.)

21 On May 19, 2005, DHS served Petitioner with a "Notice to Alien of File Custody
22 Review," indicating that Petitioner's custody status would be reviewed on or about
23 August 5, 2005. (Ex. 120.)

24 On June 1, 2005, Petitioner's counsel submitted a Request for Release on Order
25 of Supervision to Philip Crawford, Filed Office Director, ICE and Patrick Contreras,
26 Supervisor, ICE. (Ex. 125-127.) The request was denied by Mr. Crawford, who

27
28
- 3 -

1 reiterated that Petitioner's custody status would be reviewed on August 5, 2005, as
2 scheduled. (Ex. 128.)

3 On August 11, 2005, Petitioner's counsel submitted a request to Mr. Crawford
4 to expedite Petitioner's supervised custody release, (Ex. 129.) Mr. Crawford responded,
5 noting that Petitioner's custody status review was completed on August 21, 2005, and
6 that a letter notifying him of the decision to continue detention was served in person on
7 August 24, 2005. (Ex. 130.)

8 On August 12, 2005, the Ninth Circuit entered a Stay of Removal for Petitioner
9 until the issuance of the mandate on his Petition for Review. (Ex. 131-132.)

10 On November 15, 2005, the Petitioner filed a Petition for Writ of Habeas Corpus
11 with this Court. On November 16, 2005, the Petitioner filed an Amended Petition with
12 the Court (Doc. # 4), which the Court ordered served on Respondents. (Doc. # 5)
13 Respondents submitted a Response to the Amended Petition on January 27, 2005 with
14 Exhibits Bates numbers 001–135 attached.

## DISCUSSION

### Petitioner's Arguments

17 Petitioner argues that his continued and indefinite detention is a violation of his
18 due process and an abuse of discretion because it is neither statutorily required, nor
19 reasonably based on the facts at hand.

### Respondents' Arguments

21 Respondents argue first, that Petitioner failed to exhaust administrative remedies,
22 and second, that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c).

### Jurisdiction

24 The federal habeas corpus statute, 28 U.S.C. § 2241 grants District Courts the
25 power to issue habeas corpus relief where the petitioner is in custody in violation of the
26 Constitution or laws or treaties of the United States. 28 U.S.C. § 2241. Specifically,
27 the Supreme Court has held that Section 2241 confers jurisdiction upon the federal

- 4 -

courts to hear cases involving statutory and constitutional challenges to both pre- and post-removal detention of aliens in deportation proceedings. *See Demore v. Kim*, 123 S.Ct. 1708, 538 U.S. 510 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491 (2001).

**Exhaustion**

Respondents argue that Petitioner failed to exhaust his administrative remedies by failing to appeal the immigration judge's denial of bond on May 16, 2005. This argument fails for two reasons. First, this determination is not the determination at issue here, nor is it the cause of Petitioner's immediate detention. Petitioner remains in custody pursuant to the DHS's custody review and denial of release completed on August 21, 2005. Second, while the government broadly asserts that exhaustion is required in this instance, the government fails to indicate what statutory or administrative provisions mandate exhaustion in the present circumstances. In the present case, there does not appear to be an explicit provision which requires administrative review prior to the filing of an administrative action. *See Tam v. INS*, 14 F. Supp. 2d 1184, 1189 (E.D. Cal. 1998) ("[J]urisdiction is not foreclosed by petitioner's failure to exhaust administrative remedies.")

**Merits**

Mandatory Detention

Respondent contends that petitioner is subject to the mandatory detention provisions of 8 U.S.C. § 1226. Petitioner is subject to an administratively final order of removal. See 8 U.S.C. § 1101(a)(47)(B)(defining final order of deportation) Although Petitioner is subject to an administratively final order of removal, the "removal period" has not yet begun because his removal order is currently on appeal to the Ninth Circuit and because the Ninth Circuit has granted Petitioner a stay of his removal. The "removal period" will not begin for Petitioner until "the date of [Ninth Circuit's] final order." 8 U.S.C. § 1231(a)(1)(B)(ii). Accordingly, Petitioner's current

detention is pursuant to the pre-removal order detention statute, 8 U.S.C. § 1226, section 236 of the INA, rather than the post-removal order detention statute, 8 U.S.C. § 1231.  *See Tijani v. Willis,* 430 F.3d 1241, n.7, (9th Cir. 2005); *see also Kothandaraghipathy v. DHS*, 396 F.Supp.2d 1104, 1106 (D.Ariz. 2005).  Petitioner concedes that his detention is regulated by the statutory provisions of 18 U.S.C. § 1226.

The Fifth Amendment entitles aliens to due process of law in deportation proceedings. *Demore v. Kim*, 123 S.Ct. 1708, 1717 (citing *Reno v. Flores*, 507 U.S. 292, 306, 113 S.Ct. 1439 (1993)).  The Court in *Kim*, addressing a constitutional challenge to the mandatory detention provision, held that detention during removal proceedings is a "constitutionally permissible part of that process." *Kim*, 123 S.Ct. at 1722.  Key to the Court's holding was the "definite termination point" of the proceedings, roughly a month and a half in the vast majority of cases, and about five months in the minority of cases in which the alien chooses to appeal; and the criminal alien's concession that he or she is deportable. *Kim*, 123 S.Ct. 1720-22.

While the Supreme Court has found the mandatory detention provisions of 18 U.S.C. § 1226 to be valid under certain circumstances, this Court finds Petitioner's continued detention to be unconstitutional and distinguishable from *Kim* for several reasons.

First, the Court in *Kim* found mandatory detention constitutional only where the criminal alien conceded deportability.  Kim "did not dispute the validity of his prior convictions, which were obtained following the full procedural protections our criminal justice system offers" or the "conclusion that he [wa]s subject to mandatory detention under § 1226(c)." *Kim*, 126 S.Ct. at 1712.  "In conceding that he was deportable, respondent forwent a hearing at which he would have been entitled to raise any non-frivolous argument available to demonstrate that he was not properly included in a mandatory detention category. *Kim*, supra, citing 8 CFR § 3.19(h)(2)(ii)(2002); *Matter of Joseph*, 22  I. & N. Dec. 799, 1999 WL 339053 (BIA 1999).

- 6 -

1    In this case, Petitioner has not conceded deportability, and, in fact, was not even placed in the mandatory detention category by the Service, (see Ex. 133-134) and, accordingly, was not provided an opportunity for a *Joseph* hearing or an opportunity to argue that his prior was improperly included in the mandatory detention category. The argument that Petitioner's prior convictions placed him in that category was not even raised until the Respondents filed their Response in this habeas case.

Second, this case has far exceeded the brief period of detention envisioned by the Court in *Kim* for the majority of cases, or even the minority of cases in which the Court considered the alien might appeal. Petitioner has now been in detention for more than 400 days, and it has been approximately 300 days since his last review of detention. The Court of Appeals for the Ninth Circuit distinguished the holding in *Kim*, and the authority conferred by § 1226(c) as applying to expedited removal of criminal aliens only. *Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005). This case has clearly not been an "expedited" case.

Tijani, detained pursuant to the mandatory provisions of 8 U.S.C. § 1226(c), appealed his order of removal first to the BIA, and second, filed a petition for review of the BIA's decision to the Ninth Circuit Court of Appeals. His removal was stayed pending the Ninth Circuits decision, however, he was detained throughout the proceedings. *Tijani*, 430 F.3d at 1246. (Judge Tashima, concurring)  Although Tijani had early in his case requested some continuances, which the Ninth Circuit obviously considered negligible, in Petitioner's case, there is no evidence that any delay in the proceedings beyond bureaucratic delay is attributable to Petitioner[2].

---

[2]    Clearly, it was Mr. Njai who filed an appeal and the Petition for Review to the Ninth Circuit, however, the Ninth Circuit obviously did not consider this an impediment to relief for Tijani. *See Tijani*, 430 F.3d at 1246 (Judge Tashima concurring)

1    Finally, mandatory detention is inappropriate in this case, where, pursuant to the
2 language of the statute, Petitioner was taken into custody many years after his release
3 from federal custody for his conviction under 18 U.S.C. § 911. *See Quezada-Bucio* v.
4 Ridge, 317 F.Supp2d 1221 (W.D. Wash 2004). (holding that 8 U.S.C. 1226(c), which
5 substitutes "when ... released" for "upon release," does not apply to a petitioner who
6 was detained three years after release from incarceration).

7    For the above stated reasons, this Court finds that the mandatory provisions of
8 8 U.S.C. § 1226(c) do not apply to Petitioner's case.

9 Due Process

10   In *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001),
11 the United States Supreme Court recognized the constitutional implications of
12 prolonged detention for those subject to a valid order of removal. "Freedom from
13 imprisonment-from government custody, detention, or other forms of physical
14 restraint-lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause
15 protects." *Zadvydas*, 533 U.S. at 690. "[G]overnment detention violates that Clause
16 unless the detention is ordered in a criminal proceeding with adequate procedural
17 protections, or, in certain special and 'narrow' non-punitive 'circumstances,' where a
18 special justification, such as harm-threatening mental illness, outweighs the
19 'individual's constitutionally protected interest in avoiding physical restraint.' " *Id.*
20 (citations omitted).

21   Petitioner asks this Court for immediate release.  This Court recognizes that,
22 ordinarily, detention decisions under 8 U.S.C. § 1226 are not subject to judicial review.
23 Petitioner's continued detention, without review, has become presumptively
24 unreasonable. *See Zadvydas*. Furthermore, review of the decision previously rendered
25 in this case, demonstrates that Petitioner, although granted a detention review, was not
26 granted a meaningful review.

27
28
- 8 -

1    The Decision to Continue Detention states in support of its decision denying
2 release that "[I]t has been considered that you did not submit any support
3 documentation on behalf of your case." (Ex. 133.) On the contrary, Petitioner's counsel
4 submitted three pages of documentation addressing specifically, point by point, the ten
5 categories the Deciding Official had notified Petitioner would be open for consideration
6 in the review of Petitioner's custody. (Ex. 120-127.)

7    Despite notifying Petitioner that it would consider these ten categories, and
8 despite Petitioner's extensive preparation of materials in response, the Deciding Official
9 completely ignored both the categories and the material in making the decision to detain
10 Petitioner. (Ex. 133.)

11   The Deciding Official did note that Petitioner had no disciplinary issues during
12 his detention, but, in an interesting turn of logic, noted that his conviction for
13 Impersonation of a Citizen of the United States led ICE to believe that Petitioner posed
14 both a threat to the community and a flight risk.

15   Petitioner's so called custody review did not meet the constitutional standards
16 procedural due process demands in this case. Accordingly, after a careful review of the
17 file in this case, the Magistrate Judge recommends that the District Court order
18 Respondents to release petitioner immediately on reasonable conditions. There is no
19 indication on this record that petitioner is a danger to the community or a flight risk.
20 Petitioner has a young daughter here. He has not fled throughout any of the immigration
21 court's earlier proceedings.

22   Alternatively, the Magistrate Judge recommends that the District Court order
23 Respondents to provide Petitioner with a hearing within 60 days before an Immigration
24 Judge with the power to grant him bail unless the government establishes that he is a
25 flight risk or will be a danger to the community; further ordering the Immigration Judge
26 to specifically address in a written decision the categories noticed by DHS, and the
27
28

1  material submitted by Petitioner at Exhibit 125 as it relates to those categories and flight
2  risk and danger to the community.

### RECOMMENDATION

Accordingly, for the reasons set forth above, **THE MAGISTRATE JUDGE RECOMMENDS** that the District Court, after its independent review of the record, enter an order **GRANTING** the Amended Petition for Writ of Habeas Corpus (Docket #4).

Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within 10 days of being served with a copy of this Report and Recommendation. If objections are not timely filed, they may be deemed waived. If objections are filed the parties should use the following case number: **CV 04-3704-PHX-SRB.**

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the attorneys for the Plaintiff and for the Defendants.

DATED this 15th day of June, 2006.

_____
Bernardo P. Velasco
United States Magistrate Judge

- 10 -